IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANET L. PEERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-547-BA |
| | ) |
| MICHAEL ASTRUE,[1] | ) |
| Commissioner, Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Plaintiff Janet Peery seeks judicial review of a denial of benefits by the Social

Security Administration ("SSA").  The Court affirms the SSA's decision.

## I.    BACKGROUND

Ms. Peery applied for insurance benefits based on an alleged disability.

Administrative Record at pp. 54-56 (certified Aug. 4, 2006) ("Rec.").  The SSA denied the

application initially and on reconsideration.  *Id.* at pp. 28-29.  A hearing took place,[2] and an

administrative law judge found that Ms. Peery was not disabled in light of her ability to

---

[1]     In the complaint, Ms. Jo Anne B. Barnhart was named as the defendant.  During the
pendency of the action, Mr. Michael Astrue became the Commissioner of the Social Security
Administration.  Thus, the Court substitutes Mr. Astrue as the defendant.  *See* Fed. R. Civ. P.
25(d)(1) ("When a public officer is a party to an action in his official capacity and during its
pendency . . . ceases to hold office, the action does not abate and the officer's successor is
automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) (2000) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the person occupying
the office of Commissioner of Social Security or any vacancy in such office.").

[2]     *See* Rec. at pp. 224-52.

perform her past work or other work existing in the national economy.[3]  The Appeals Council

declined jurisdiction,[4] and the present action followed.  Ms. Peery alleges:

- a lack of substantial evidence to support the residual functional capacity ("RFC") assessment, and

- a legal error at step four.

## II.    STANDARD OF REVIEW

The Court's review entails only a determination of whether the SSA's decision is

based on substantial evidence and the correct legal standard.  *See Emory v. Sullivan*, 936 F.2d

1092, 1093 (10th Cir. 1991).  Evidence is substantial if it is greater than a scintilla.  *See Sisco*

*v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard,

reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

However, a court may not reweigh the evidence or substitute its judgment for that of the

SSA.  *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th

Cir. 1992).

## III.    RFC ASSESSMENT

According to the administrative law judge, the Plaintiff could perform light work with

limitations involving:

- sitting, standing, or walking;

---

[3]      Rec. at pp. 18, 24-25.

[4]      Rec. at pp. 7-10.

- balancing, kneeling, crawling, or working around chemicals; and

- climbing, crouching, or stooping.

Rec. at pp. 23-25, 248.  According to the Plaintiff, this determination lacked substantial evidence because:

- it did not reflect limitations involving the Plaintiff's ability to sit, stand, walk, and manipulate; and

- the administrative law judge relied solely on conclusory, speculative, or inaccurate findings from non-examining agency physicians.

The Plaintiff's arguments are invalid.

A.    Limitations Regarding the Ability to Sit, Stand, Walk, and Manipulate

The administrative law judge's RFC assessment was supported by substantial evidence.

The Medical Evidence

The medical evidence relating to Ms. Peery's abilities to sit, stand, walk, and manipulate appears in reports by Dr. William Smith, Dr. Robert German, Dr. Paul Dichter, Dr. Eugene Arthur, Dr. Luther Woodcock, and Dr. Vallis Anthony.

In January 2001, Dr. Smith indicated that the Plaintiff had a heel spur on her right foot, but was doing well with minimal problems.  *Id.* at p. 150.  Almost one month later, the Plaintiff reported that she could "do more on her feet" and move as rapidly as she had prior to surgery.  *Id.*  In April 2002, Ms. Peery suffered a right ankle sprain; but within one week, she reported less pain and an ability to walk without significant discomfort.  *Id.* at pp. 148-49.  Dr. Smith recommended physical therapy and by July 2002, Ms. Peery reported

3

"walking with no discomfort" but with "some weakness in the ankle after an extended walk." *Id.* at p. 148.

In August 2003, the Plaintiff saw Dr. German following an injury to the left knee. *Id.* at pp. 152-54. Dr. German prescribed physical therapy and performed arthroscopic surgery on the knee. *Id.* at pp. 153, 194-96. Roughly two months later, Dr. German found no effusion, full range of motion, and minimal tenderness. *Id.* at p. 190.

During a consultative examination in December 2003, Dr. Dichter noted:

- crepitation[5] in both knees with full range of motion,

- an ability to walk steadily and with stability with use of a cane, and

- "restriction of motion" in the left ankle.

*Id.* at p. 156.

In December 2003 and April 2004, Dr. Woodcock and Dr. Anthony stated that Ms. Peery had the RFC to occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand, walk, and sit for six hours during an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* at pp. 163, 165, 174-75.

---

[5]     "Crepitation" is defined as "the noise made by rubbing together the ends of a fractured bone." *See* Stedman's Medical Dictionary 457 (28th ed. 2006).

In April 2004, Dr. Arthur noted that the Plaintiff had "mild Bouchard's nodes"[6] and she complained of low back and hip pain when walking. *Id.* at p. 170. In January 2005, Ms. Peery told Dr. Arthur about problems climbing stairs and symptoms involving numbness and pain. *Id.* at p. 220. In July 2005, Dr. Arthur noted:

- osteoarthritis in Ms. Peery's hands,

- complaints of knee pain from weight bearing and stair-climbing, and

- back and hip pain which was aggravated by standing and "excessive" sitting and lifting.

*Id.* at p. 221.

<u>Limitations on Walking and Standing</u>

The administrative law judge restricted Ms. Peery's walking and standing to four hours during an eight-hour workday, with normal breaks. *See infra* note 7. This finding was supported by substantial evidence.

Following the heel spur and ankle injury, Dr. Smith stated that the Plaintiff had reported "walking with no discomfort" and that the only weakness involved her ankle after "extended" walking. Rec. at p. 148; *see supra* p. 4. The Seventh Circuit Court of Appeals has equated an "extended" period of walking with the ability to walk six hours in an eight-hour workday. *See Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir. 1992). But here, the

---

[6]     "Bouchard's nodes" are bony outgrowths of the middle joints of the fingers. *See* Dorland's Illustrated Medical Dictionary 1141 (27th ed. 1988).

administrative law judge limited Ms. Peery's walking to four hours a day with normal breaks,[7] which would not be considered an "extended" period.

Following the Plaintiff's recovery from her knee injury, Dr. German noted "full range of motion"[8] and Dr. Dichter said that Ms. Peery's walk was "steady [and] stable."  Rec. at p. 156; *see supra* p. 4.

Ms. Peery points to Dr. Arthur's opinion regarding pain in the lower back and hips which was aggravated by certain physical activity.  *See* Rec. at pp. 220-21; *see supra* p. 5. According to the Plaintiff, the RFC assessment did not reflect Dr. Arthur's opinion.  But Ms. Peery is mistaken, as the RFC determination accounted for the limitations on walking and standing. *See supra* p. 5.  Accordingly, substantial evidence supported the findings regarding Ms. Peery's ability to walk and stand.

Finally, the Plaintiff contends that the administrative law judge's RFC assessment should have included the need for a cane.  The Plaintiff does not point to any evidence which would have required the judge to include use of a cane in the RFC finding.  As the judge noted,[9] Dr. Dichter stated that with a cane Ms. Peery could walk with steadiness, stability,

---

[7]     In the written decision, the administrative law judge did not say that the Plaintiff could walk or stand for only four hours in the workday.  But in questioning the vocational expert, the judge asked about the ability to work for a claimant who could only stand or walk for four hours in the workday. Rec. at pp. 248-49.  Thus, the Plaintiff "assume[s] the [administrative law judge] intended for the RFC to restrict Ms. Peery to four hours of walking/standing in an eight hour day."  Plaintiff's Opening Brief at p. 10 n.6 (Dec. 27, 2006).

[8]     Rec. at p. 190.

[9]     Rec. at p. 20.

6

and security.[10]  The issue for the judge was the kind of activity Ms. Perry could perform with

a cane.  *See Hull v. Chater*, 97 F.3d 1464, 1996 WL 528317, Westlaw op. at 2 (10th Cir.

Sept. 17, 1996) (unpublished op.) (rejecting a similar claim because of the absence of

evidence "that the use of a cane would prevent [the plaintiff] from performing the minimal

standing, walking and carrying requirements of sedentary work" (citations omitted)).  The

administrative law judge carried out this duty and had substantial evidence to support her

assessment of Ms. Peery's ability to walk with a cane.  *See Rutherford v. Barnhart*, 399 F.3d

546, 556 (3d Cir. 2005) (rejecting a similar claim because the administrative law judge had

"actually considered [the plaintiff's] claimed need for a cane" and the alleged failure to

incorporate the need for a cane in the written decision "did not affect the outcome of the

analysis in any way").

<u>Limitations on Sitting</u>

The administrative law judge also had substantial evidence for her RFC assessment

concerning Ms. Peery's ability to sit.

The evidence relating to the sitting limitation consisted of the Plaintiff's testimony and

the findings of Dr. Arthur.  Dr. Arthur noted that the Plaintiff had translumbar pain, which

was aggravated by excessive sitting.  Rec. at p. 221; *see supra* p. 5.  And Ms. Peery testified

that if she sat in one position for "very long," she would suffer spasms in her back and feet.

Rec. at p. 237.  The administrative law judge's RFC assessment accounted for these

---

[10]     Rec. at p. 156.

limitations, as it restricted Ms. Peery to work which would involve sitting with normal breaks for four hours during an eight-hour workday.[11]  Because the RFC assessment was consistent with Ms. Peery's alleged limitations on sitting, the administrative law judge did not err.  *See Prince v. Barnhart*, 107 Fed. Appx. 170, 173 (10th Cir. July 2, 2004) (unpublished op.) (no error when the RFC assessment was consistent with the plaintiff's limitations).

<u>Limitations on Manipulation</u>

According to Ms. Peery, the RFC assessment lacked substantial evidence because it had omitted any manipulative limitations.  But substantial evidence supports the judge's decision to omit these limitations.

In December 2003, Dr. Dichter noted that Ms. Peery had exhibited a full range of motion in both wrists and thumbs and all of her fingers.  Rec. at pp. 158, 160.  Dr. Dichter also stated that Ms. Peery could effectively oppose the thumb to her fingertips, manipulate small objects, and effectively grasp tools.  *Id.*  And Drs. Anthony and Woodcock stated that Ms. Peery had no manipulative limitations.  *Id.* at pp. 165, 176.

Dr. Arthur opined that Ms. Peery had osteoarthritis in her hands and "mild Bouchard's nodes."  *See supra* p. 5.  But the physician did not state that the Plaintiff's hand problems would have affected her ability to perform functions needed in the workplace.  *See* Rec. at

---

[11]     The Plaintiff has "assume[d]" that the RFC findings included the limitations in the administrative law judge's questioning of the VE.  *See supra* note 7.  The hypothetical question involved sitting with normal breaks for four hours in a "normal" workday.  Rec. at pp. 248-49.

pp. 170, 221.  As a result, the administrative law judge did not err through the omission of a related limitation in the RFC assessment.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (rejecting an argument that the administrative law judge had failed to include limitations concerning the plaintiff's limited hand use).

B.     Reports From Agency Physicians

In part, the Plaintiff alleges that the RFC assessment lacked substantial evidence because it was based on the opinion of an agency physician, Dr. Woodcock, who had not examined Ms. Peery.[12]  Ms. Peery argues:

- The physician had merely checked spaces on the forms without explanation, and

- Dr. Anthony's opinion had been inaccurate.

These arguments lack merit.

Ms. Peery alleges that Dr. Anthony's opinion had lacked explanation.  This argument is belied by the record, as Dr. Anthony stated:  "The claimant alleges secondary knee pain and fibromyalgia.  She is 62 inches 178#s.  She had a limited ROM in her left ankle.  All other joints were normal ROM.  She had 5/5 strength."  Rec. at p. 174.

The agency doctor explained his conclusions, and the report provided substantial evidence for the administrative law judge's reliance on the RFC assessment.  *See*, *e.g.*, *Wise v. Barnhart*, 42 Fed. Appx. 331, 334 (10th Cir. July 9, 2002) (unpublished op.) (holding that

---

[12]     Ms. Peery also argues that the administrative law judge could not rely on Dr. Woodcock's opinions.  The Court need not address this argument because substantial evidence otherwise existed for the judge's RFC assessment.

a physician's medical assessment form, accompanied by a narrative history, constituted substantial evidence for the administrative law judge's findings).

The Plaintiff also argues that Dr. Anthony's assessment was inaccurate. This argument is circular. The issue is simply whether the administrative law judge had substantial evidence for her RFC assessment. Dr. Anthony's assessment provided such evidence, and its "accuracy" was to be weighed by the administrative law judge rather than the Court. *See supra* p. 2.

     C.    <u>Conclusion</u>

The administrative law judge's RFC assessment accounts for limitations on Ms. Peery's abilities to sit, stand, and walk, and the administrative law judge did not err through a failure to include manipulative restrictions. Ms. Peery argues that the judge should have found greater limitations, but the Court cannot reweigh the evidence. The issue is whether substantial evidence exists for the RFC determination, and the Court answers in the affirmative.

## IV.    THE PLAINTIFF'S OTHER ALLEGATIONS

Ms. Peery also alleges error at step four by concluding that she could return to past relevant work which did not qualify as "substantial gainful activity." However, the Plaintiff concedes that "[i]f the RFC was indeed supported by substantial evidence, then the [administrative law judge's] alternative Step Five findings will deem any other error harmless." Plaintiff's Opening Brief at p. 8 (Dec. 27, 2006). The Court has already determined that the RFC assessment was supported by substantial evidence. *See supra* p. 10.

Accordingly, the Court need not address Ms. Peery's claim involving the ability to perform past relevant work.

V.    SUMMARY

The Court affirms the SSA's decision.

SO ORDERED this 18th day of May, 2007.


_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge